## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

VOLVO TRADEMARK HOLDING )
AKTIEBOLAGET, a Swedish corporation; )
VOLVO CONSTRUCTION EQUIPMENT )
NORTH AMERICA, INC., a Delaware )
corporation; and CHAMPION ROAD )
MACHINERY LIMITED, a Canadian )
corporation, )
 )
   Plaintiffs, )
 )
  Vs. )  Civil No. 1:00CV238
 )
AIS CONSTRUCTION EQUIPMENT )
CORPORATION, a Michigan corporation; )
CLM EQUIPMENT COMPANY, INC., )
a Texas corporation; FUTURE )
EQUIPMENT COMPANY, INC., a Texas )
corporation; and CLARK MACHINERY )
COMPANY, an Arkansas corporation, )
 )
   Defendants. )
_____)
AIS CONSTRUCTION EQUIPMENT )
CORP., a Michigan corporation; CLM )
EQUIPMENT CO., INC., a Louisiana )
corporation; FUTURE EQUIPMENT )
CO., a Texas corporation; and CLARK )
MACHINERY CO., an Arkansas )
corporation, )
 )
   Plaintiffs, )
 )

| | | |
|---|---|---|
| **Vs.** | ) | **Civil Action 1:01CV232** |
| | ) | |
| **VOLVO CONSTRUCTION** | ) | |
| **EQUIPMENT NORTH AMERICA,** | ) | |
| **INC., a Delaware corporation; and** | ) | |
| **CHAMPION ROAD MACHINERY,** | ) | |
| **LTD., a Canadian corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on motion of Clark Machinery Limited ("Clark") to strike the reply memorandum of Volvo Construction Equipment North America ("Volvo CE") and Champion Road Machinery Limited ("Champion Road") (collectively "Volvo"), Volvo's opposition thereto, Clark's motion for summary judgment, and Volvo's cross-motion for summary judgment.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case began over five years ago with numerous parties, claims, counterclaims, and defenses. When this case was originally before the Court, summary judgment was granted in favor of Volvo as to all claims against them by the Defendants. *See Volvo Trademark Holding*

***Aktiebolaget v. CLM Equip. Co.*, 236 F.Supp.2d 536 (W.D.N.C. 2002).**

The Defendants, including Clark, appealed the Court's decision to the Fourth Circuit Court of Appeals, which affirmed on all grounds but one – Clark's claim under the Arkansas Franchise Practices Act (AFPA) for termination of its franchise without "good cause." ***See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581 (4th Cir. 2004).** The Fourth Circuit held, *inter alia*, that the AFPA represented fundamental policy of Arkansas, that the parties could not waive application of the Act, and that a genuine issue existed regarding whether Volvo terminated the Dealership Agreement with the requisite "good cause." ***Id.*** Inasmuch as a comprehensive review of the facts in this case has been previously undertaken by this Court and the Fourth Circuit, only those facts necessary for a determination of the one remaining claim will be set forth below.

Clark is a retail dealer of large earth-moving motor graders. ***Id., at 587.*** On September 25, 1984, Champion Road and Clark entered into a Distributor Sales Agreement, whereby Clark was appointed as an authorized distributor of the "700 Series" Champion Road motor grader. Clark's area of primary responsibility consisted of 57 counties in Arkansas. ***See,* Exhibit A, Distributor Sales Agreement, effective September 25,**

**1984,** *attached to* **Affidavit of Michael J. Lockerby, filed September 22,**

**2005.** The relationship between Champion Road and Clark continued,

apparently in a substantially unchanged manner, until Volvo acquired

Champion Road in 1997. After the acquisition, Volvo and Champion Road

entered into an Agreement, the material terms of which were as follows:

Volvo and Champion Road manufactured and sold different products for

the construction and road building market that complemented each other;

the market share and profits of the companies could be increased by using

the same dealers for both product lines; obtaining this result required

terminating relationships with some dealers; and Champion Road

appointed Volvo as its exclusive agent in regards to, among other things,

determining which relationships should be terminated. ***See,*** **Exhibit G,**

**Agreement between Champion Road and Volvo, dated September 11,**

**1997,** *attached to* **Affidavit of Scott E. Korzenowski, filed October 21,**

**2005.**

By letter dated October 10, 2000, Volvo informed Clark that it was

one of the dealers being terminated effective on January 9, 2001. ***See,***

**Exhibit D, Letter from John Beckmann to Odell Pheiffer, dated**

**October 10, 2000,** *attached to* **Lockerby Affidavit.** Volvo's letter stated

that "Champion has assigned or otherwise transferred its interests under the Dealer Agreement to Volvo," and that Volvo was terminating the Agreement pursuant to the provision allowing terminations without cause. *Id.* Clark advised that the provisions of the AFPA had not been "addressed" by Volvo, and acknowledged that, like Volvo, Clark hoped to resolve the situation; however, no mutually satisfactory resolution was reached. *See,* **Exhibit E, Letter from Odell Pfeiffer to John Beckmann, dated November 10, 2000,** *attached to* **Lockerby Affidavit.**

Volvo filed its declaratory judgment complaint in this Court on October 10, 2000, naming Clark as a defendant. ***See* Complaint in Civil No. 1:00cv238 (the North Carolina Litigation), filed October 10, 2000.** Clark answered and also asserted a counterclaim against Volvo for violation of the AFPA. ***See* Answer and Counterclaim, filed September 17, 2001.** In March 2001, Clark and the other defendants filed an action in the United States District Court for the Eastern District of Arkansas, asserting the counterclaims of the action pending here as claims in the Arkansas litigation. The federal court in Arkansas transferred that litigation to this Court on August 30, 2001, and the cases were consolidated. ***See,* Complaint in Civil No. 1:01cv232 (the Arkansas Litigation), filed March**

**20, 2001; Order of Chief U.S. District Court Judge Susan Wright for the Eastern District of Arkansas, filed August 30, 2001; Memorandum and Order, filed January 9, 2002 (denying motion to dismiss and granting motion to consolidate cases).**

After the Defendants' appeal to the Fourth Circuit, the only remaining claim is Clark's statutory claim (in the Arkansas litigation) and statutory counterclaim (in the North Carolina litigation) – which are identical – against Volvo for violation of the AFPA by terminating Clark's franchise without "good cause." *See Volvo Constr.*, **386 F.3d at 611.** Both parties have moved for summary judgment on this claim.

## II. STANDARD

When a party makes a properly supported motion for summary judgment, the burden shifts to the non-movant to show that there is a genuine issue for trial. *Sylvia Dev. Corp. v. Calvert County, Md.*, **48 F.3d 810, 817 (4th Cir. 1995).** For purposes of summary judgment, the evidence must be viewed in a light most favorable to the non-movant. *A Fisherman's Best v. Recreational Fishing Alliance*, **310 F.3d 183, 190 (4th Cir. 2002)**. Additionally, any permissible inferences from the

underlying facts must be drawn in the light most favorable to the non-moving party. **Sylvia Dev. Corp., supra.** A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleading[s], but [must] . . ., by affidavits or as otherwise provided in [Rule 56], . . . set forth specific facts showing that there is a genuine issue for trial." **Fed. R. Civ. P. 56.** "Summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial." **Smith v. Blackledge,** 451 F.2d 1201, 1202 (4th Cir. 1971).

## III. ANALYSIS

### A. Clark's Motion to Strike

On June 23, 2005, this Court entered an Order establishing a schedule for motions regarding summary judgment. **Order, filed June 23, 2005.** Pursuant to this Order, Clark was given 45 days to file a motion for summary judgment, Volvo was given 45 days from the filing of Clark's motion to file a response thereto as well as any cross-motion for summary judgment, and Clark was given 30 days to file a response to any cross-

motion by Volvo. *Id.*, at 2. The parties were further directed that no brief was to "exceed 20 pages in length, double-spaced, using a font no smaller than 12." *Id.* However, Volvo ignored the Order and filed a reply memorandum in support of its cross-motion for summary judgment.[1] The Court's Order limiting the parties' filings was exceedingly clear; therefore, Clark's motion to strike Volvo's reply memorandum is granted and such is stricken from the record.

**B. Cross-Motions for Summary Judgment**

**1. Scope of Remand**

The Fourth Circuit directed this Court to consider Clark's claim that Volvo terminated the Agreement without "good cause" pursuant to § 4-72-204(a) of the AFPA. *Volvo Constr., supra.* However, Volvo argues that the Court should address initially whether the Act applies to Clark,

---

[1]Volvo asserts that it "had to file *something* by November 4, 2005," either a reply memorandum or a notice to the Court that one would not be filed as provided by Local Rule 7.1(b). **Volvo's Opposition to Clark's Motion to Strike Reply Memorandum, filed November 23, 2005, at 3.** Volvo's argument is disingenuous. The Court's Order limited the parties' filings because of the litigious nature of these proceedings heretofore. It appears, however, that since the Court did not specifically ban the filing of reply briefs, Volvo's counsel presumptively assumed they were allowed.

contending that there was no "franchise" under the Act then in effect at the time the Agreement was entered. ***See*** **Volvo's Opposition to Clark's Motion for Summary Judgment and Memorandum in Support of Cross-Motion for Summary Judgment ("Volvo's Opposition"), filed September 23, 2005, at 16-19.** Clark argues that the Court must also consider its additional asserted grounds for recovery under the Act for failure to provide proper notification of termination under § 4-72-204(b) of the AFPA and for Volvo's alleged conduct of "omit[ting] to state a material fact" under § 4-72-207(a)(2) of the Act. ***See*** **Clark's Memorandum in Support of Motion for Summary Judgment ("Clark's Memorandum"), filed August 8, 2005, at 16-19; Clark's Memorandum in Opposition to Volvo's Motion for Summary Judgment and in Reply to Volvo's Opposition to Clark's Motion for Summary Judgment ("Clark's Opposition"), filed October 21, 2005, at 8-11.**

Pursuant to 28 U.S.C. § 2106, a court of appeals "may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review." In addition, the appellate court "may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be

just under the circumstances." *Id.* A lower court's obligation when a case is remanded is very clear.

> Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is "controlling as to matters within its compass." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 [ ] (1939). Indeed, it is indisputable that a lower court generally is "bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest." *Id.* Because this "mandate rule" is merely a "specific application of the law of the case doctrine," in the absence of exceptional circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993). In addition, the rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court. *See id*. at 250. Thus, when this court remands for further proceedings, a district court must, except in rare circumstances, "'implement both the letter and spirit of the . . . mandate, taking into account [our] opinion and the circumstances it embraces.'" *Id*. (*quoting United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)).

*United States v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993); *see also, United States v. Williams*, 2006 WL 162716, *2 (4th Cir. 2006) (quoting *Bell* in regards to both the firmness of the mandate rule and the three very narrow instances in which deviation from the mandate rule may be warranted).

With these principles in mind, the Court considers Volvo's argument

regarding the scope of remand in this case. It is clear that Volvo's

assertion regarding non-application of the Act is precluded by the Fourth

Circuit's opinion, which stated in relevant part:

> Next, *before assessing whether the State Statute[] constitute[s]*
> *fundamental polic[y] of Arkansas . . . and thus govern[s] the*
> *Dealer Agreement[], we must decide whether [Clark is a]*
> *protected part[y] under [that] statute[].* If [Clark] is protected by
> . . . the Statute[], we must then determine whether the statute
> also applies to Champion Motor Graders.
>
> . . .
>
> Next we assess whether Clark . . . can state a claim under the
> Arkansas Act . . . . In the district court, Volvo maintained that
> Clark was not protected by the Arkansas Act . . . because,
> pursuant to the Choice-of-Law Provision, Clark's . . . Dealer
> Agreement[] [is] governed by South Carolina law. Volvo did
> not, however, assert that the statute[] in question, by [its] terms,
> fail[s] to apply to Clark's . . . Dealer Agreement[]. *Absent the*
> *Choice-of-Law Provision, Clark could state a claim under the*
> *Arkansas Act . . . . We must therefore decide whether [the*
> *Arkansas Franchise Practices Act] embodies a fundamental*
> *state policy.*

**Volvo Constr.,** 386 F.3d at 604-06 (emphasis added). The Fourth Circuit

would not have considered whether the Act constituted fundamental policy

unless and until it found that Clark was a "protected part[y] under [that]

statute[]." *Id.*, at 604. The appellate court specifically determined that the

AFPA constituted fundamental policy of Arkansas, and in so doing,

foreclosed the argument now made by Volvo that the Act does not offer

protection to Clark. **See, Bell, 5 F.3d at 66 ("Because this 'mandate rule' is merely a 'specific application of the law of the case doctrine,' in the absence of exceptional circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly *or impliedly decided by the appellate court*." (emphasis added) (citation omitted)).** Additionally, Volvo did not raise the issue of non-application before this Court in the first proceeding and apparently did not do so before the Fourth Circuit. Remand is not an opportunity for parties to assert new arguments or legal theories that were raised neither in the district court originally nor on appeal. Were the rule otherwise, there would be no end to any case. **See, e.g., Bell, 988 F.2d at 252 ("The law of the case doctrine dictates that all litigation must sometime come to an end.").** Volvo's argument is, therefore, rejected.

Clark's argument that this Court should consider the asserted "notice" and "material omission" claims on remand is also rejected. The Fourth Circuit expressly stated what claims were being remanded and for what purpose:

> We therefore remand Clark's statutory claim (in the Arkansas Litigation) and its statutory counterclaim (in the North Carolina Litigation) *for the district court's assessment of whether,*

> *pursuant to the Arkansas Act, Volvo terminated Clark's Dealer Agreement without good cause*.

***Volvo Constr.,* at 611 (emphasis added).** The final paragraph of the majority opinion, states:

> Pursuant to the foregoing, we affirm the district court except as to Clark's statutory claim in the Arkansas Litigation and its statutory counterclaim in the North Carolina Litigation. We vacate the judgment *on those two claims only*, and we remand for such further proceedings as may be appropriate.

***Id.* (emphasis added).** It appears that Clark believes that the more general language of this second paragraph entitles it to present additional claims for consideration. However, when these two paragraphs are read in conjunction, it is obvious the Court is only to evaluate Plaintiff's "good cause" claim. For the Court to begin examining other issues would be to deviate from the Fourth Circuit's clear mandate on remand, an action from which this Court is precluded. ***See, Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005).** Therefore, the Court will reject Clark's argument and limit its inquiry in this case to "whether, pursuant to the Arkansas Act, Volvo terminated Clark's Dealer Agreement without good cause." ***Volvo Constr., supra.***


**2.  Termination of Franchise for "Good Cause"**

Clark asserts that Volvo violated the AFPA by terminating its franchise without "good cause" pursuant to § 4-72-204(a). Clark argues that the list of occurrences provided in § 4-72-202(7) as constituting "good cause" are exclusive, that Volvo did not terminate the Agreement pursuant to any of those reasons, and that judgment against Volvo is, therefore, warranted. **Clark's Memorandum, at 12-16; Clark's Opposition, at 4-8.**

Volvo does not dispute that it did not terminate the Agreement for any of the reasons expressly provided in § 4-72-202(7). *See* **Volvo's Opposition at 22 ("Nor does Volvo dispute that Clark's termination was *not* the result of any performance deficiencies." (emphasis in original)).** Instead, Volvo argues that the list of occurrences making up the definition of "good cause" in the Act is not exclusive, and that its reasons for termination – "Volvoization"[2] and "dealer rationalization"[3] – also

_____

[2]"Volvoization" is a process which "involve[s] re-engineering and re-branding CHAMPION brand motor graders for sale under the single VOLVO trademark." **Volvo's Opposition, at 10-11.**

[3]"Dealer rationalization" is a program whereby Volvo sought "to integrate overlapping channels of distribution" by utilizing dealers "able to offer 'one stop shopping' for VOLVO brand construction equipment" (*i.e.* dealers willing and able to offer the entire Volvo line). **Volvo's Opposition, at 10.**

constitute "good cause" for franchise termination under the Act. ***Id.*, at 10-11, 22.**

The exclusivity (or lack thereof) of the items expressly listed as constituting "good cause" under § 4-72-202(7) is a matter of statutory construction. "As a federal court sitting in diversity, 'we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court.'" ***Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 274 (3d Cir. 1995) (quoting *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994)).** Neither the Arkansas Supreme Court nor Court of Appeals has addressed the issue of "good cause" under the Act.[4] "When the highest court in the state has not construed a statute which the federal court must apply, the federal court must determine what the highest state court would probably hold were it called upon to decide the issue." ***Kent Jenkins Sales, Inc. v. Angelo Bros. Co.*, 804 F.2d 482, 487 (8th Cir. 1986); *see also, Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) (same).** In making this determination, the Court is guided

---

[4]However, the Arkansas Supreme Court held that "[the Court] give[s] a liberal construction to the [AFPA] to effectuate its remedial purposes." ***Stockton v. Sentry Ins.*, 337 Ark. 507, 512, 989 S.W.2d 914, 917 (1999).**

by the principles of statutory construction that would also guide the Arkansas Supreme Court.  **See, e.g., United States v. Guyette, 382 F. Supp. 1266, 1268 (E.D. Va. 1974) ("[T]he Court must, in interpreting the statute, apply the principles of statutory construction that it believes would be used by the [highest state court] in construing same.").**  Several canons of statutory construction are relevant here:

> The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the General Assembly.  *Roy v. Farmers & Merchants Ins. Co.*, 307 Ark. 213, 819 S.W.2d 2 (1991).  When a statute is clear, it is given its plain meaning and we do not search for legislative intent.  That intent must be gathered from the plain meaning of the language used.  *Hinchey v. Thomasson*, 292 Ark. 1, 727 S.W.2d 836 (1987).

*Pugh v. St. Paul Fire & Marine Ins. Co.*, **317 Ark. 304, 307, 877 S.W.2d 577, 578 (1994).**  Arkansas also subscribes to the principle "*expressio unius est exclusio alterius*," which "is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another."  **Gazaway v. Greene County Equalization Bd., 314 Ark. 569, 575, 864 S.W.2d 233, 236 (1993); see also, $735 in U.S. Currency v. State, _____ S.W.3d _____, 2005 WL 668605 (Ark. App. 2005), rev'd on other grounds, _____ S.W.3d _____,**

**2006 WL 62159 (Ark. Jan. 12, 2006).**  Finally, absent a few special circumstances, "in construing an act, the courts are bound by specific definitions of a word by the legislature in that act[.]"  ***Bird v. Pan Western Corp.*, 261 Ark. 56, 60, 546 S.W.2d 417, 419 (1977) (citing 1A Sutherland, *Statutory Construction* (4th Ed.) pp. 59, 310, 81; §§ 20.08, 27.02, 47.07).**

Applying these principles to the statutory provision here, it is clear that "good cause" for franchise termination under the AFPA is limited to the eight occurrences specifically enumerated in § 4-72-202(7).  Volvo has pointed to no ambiguity or other defect that would render the provisions unclear and, therefore, the Court finds the statute to be clear on its face. Furthermore, the Arkansas legislature provided a specific definition of "good cause" and, having found none of the exceptional circumstances referred to in *Bird* present in this case, this Court is bound thereto.  Finally, the legislature's express designation of eight circumstances constituting "good cause" for franchise termination "may properly be construed to mean the exclusion of" other proffered circumstances.  ***Gazaway, supra.***  This would seem especially true in situations, such as here, where in defining other terms within the same Act, the legislature shows its willingness and

ability to leave a definition open for judicial expansion.  *See* **Ark. Code Ann. § 4-72-202(5) ("'Sale, transfer, or assignment' means any disposition of a franchise or any interest therein, with or without consideration, *to include, but not be limited to*, a bequest, inheritance, gift, exchange, lease, or license[.]" (emphasis added)).** Therefore, the Court determines, based on established principles of statutory construction in Arkansas, the Arkansas Supreme Court would conclude that the circumstances constituting "good cause" for franchise termination under the AFPA are limited to those expressly designated in § 4-72-202(7).[5]

_____

[5]Volvo's numerous citations to other cases dealing with "good cause" are simply not applicable here.  *See,* **Volvo's Opposition, at 24-30.**  For example, this is not a case in which another provision of the franchise statute expressly refers to market withdrawals, thereby giving the court a way to tie same into the "good cause" provision.  *See, Carolina Truck & Body Co. v. General Motors Corp.***, 102 N.C. App. 262, 267-68, 402 S.E.2d 135, 138 (1991) (cited in Volvo's Opposition, at 25).**  Nor is this a case in which the statute at issue uses the phrase "includes, but is not limited to" when defining "good cause," thereby leaving room for judicial additions.  *See, Petereit v. S. B. Thomas, Inc.***, 63 F.3d 1169 (2d Cir. 1995) (cited in Volvo's Opposition, at 28);** *General GMC, Inc. v. Volvo White Truck Corp.***, Bus. Franchise Guide (CCH) ¶ 9178, at 19,153 (D. Mass. 1987) (basing its decision on** *Amoco Oil Co. v. Dickinson***, 389 N.E.2d 406, 408-09 (Mass. 1979), wherein the court determined that business reasons constitute "good cause" because the statute said that "good cause" "shall include, but not be limited to" certain circumstances) (cited in Volvo's Opposition, at 26).**  The statute here

did not completely fail to define "good cause," thereby necessarily leaving the courts to determine what things could and could not fit the concept of "good cause" for franchise termination.  ***See C. Earl Brown, Inc. v. Commonwealth*, 555 A.2d 314 (Pa. 1989) (cited in Volvo's Opposition, at 26).**  Nor is the Court dealing with a statute in which the state supreme court has already decided to expand what things can constitute "good cause."  ***See Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373 (7th Cir. 1998) (wherein the court's decision was based on the Wisconsin Supreme Court's expansion of "good cause" under the Wisconsin Franchise Dealership Law in *Ziegler Co. v. Rexnord, Inc.*, 147 Wis. 2d 308, 433 N.W.2d 8 (Wis. 1988)) (cited in Volvo's Opposition, at 29).**

These courts all had something that this Court simply does not - a way to reach their decision that "good cause" could include market withdrawals or business decisions of the franchisor through legitimate construction of the statute at issue.  In this case, such a decision could only be reached by effectively re-writing the statute, and "[c]ourts are not at liberty to amend or repeal a statute under the guise of construction."  ***In re Shear*, 139 F. Supp. 217, 221 (N.D. Cal. 1956); *see also United States v. Childress*, 104 F.3d 47, 53 (4th Cir. 1996) ("[The legislature's] role is to enact statutes; the judiciary's to interpret those statutes as written."); *Pietras v. Curfin Oldsmobile, Inc.*, 2005 WL 2897386, \*5 (N.D. Ill. 2005) ("[T]he court's role is to interpret the law, not to judicially amend legislation.").**

### 3. Dormant Commerce Clause[6]

Volvo argues that "good cause" must include the business decisions of franchisors and market withdrawals because if "good cause" is limited only to the bases listed in the statute, the dormant commerce clause is violated and the statute is unconstitutional.[7]  ***See,* Volvo's Opposition, at 31-32.**  The presumption is just the opposite – that the legislature acted with knowledge of the law, and that the legislation is constitutional.  ***See, e.g., City of Louisville v. Babb*, 75 F.2d 162, 165 (7th Cir. 1935); *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 337 (4th Cir. 2005); *Boyd v. Weiss*, 333 Ark. 684, 688-89, 971 S.W.2d 237, 239 (1998); *Y. C.**

---

[6]The "dormant commerce clause" is simply the reverse aspect of the Commerce Clause found in article I, section 8, clause 3 of the United States Constitution.  "Although phrased as a grant of regulatory power to Congress, the [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."  ***Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 782 (4th Cir. 1996) (citation and internal quotations omitted).**

[7]Volvo also asserts that the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, prevents Clark from obtaining the relief sought.  Clark seeks damages based on the termination of its dealership without "good cause" pursuant to AFPA § 4-72-204(a).  ***See, e.g.,* Complaint (in Arkansas Litigation), ¶ 38(a) and Prayer for Relief; Counterclaim (in North Carolina Litigation), ¶ 165(a) and Prayer for Relief.**  Nothing in the Lanham Act precludes such action.

***Ballenger Elec. Contractors, Inc. v. Reach-All Sales, Inc.*, 276 S.C. 394, 397, 279 S.E.2d 127, 128 (1981).**  As the party challenging the constitutionality of the statute, Volvo bears the burden of showing that it offends the dormant commerce clause.  ***See, e.g., United States v. Seeright*, 978 F.2d 842, 848 (4th Cir. 1992); *Arkansas Tobacco Control Bd. v. Sitton*, 357 Ark. 357, 362, 166 S.W.3d 550, 553 (2004); *Y. C. Ballenger, supra*.**

The Court questions whether Volvo can properly make an argument regarding the statute's constitutionality at this point, having failed to plead such as an affirmative defense.  ***See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1271 at 586-597 (3d ed. 2004) (listing "the unconstitutionality of a statute relied on by the plaintiff" as an example of a defense that many courts treat as an affirmative defense, requiring the defense to be specifically pled pursuant to Fed. R. Civ. P. 8(c)); *Kewanee Oil & Gas Co. v. Mosshamer*, 58 F.2d 711, 712 (10th Cir. 1932) (citing a plethora of authorities before stating, "We therefore conclude that the contention that the state statute is unconstitutional is an affirmative defense, and must be so pleaded in the answer."); *see also Coppoc v. Moeller*, 69 Ark. App. 392, 394, 13**

**S.W.3d 596, 598 (2000) ("Even if an affirmative defense is raised in a motion for summary judgment, if it was not raised in the answer, then the party is precluded from arguing it at any other stage in the case[.]");** *Whitehead v. State*, **352 S.C. 215, 220, 574 S.E.2d 200, 202 (2002) ("The failure to plead an affirmative defense is deemed a waiver of the right to assert it."); S.C. R. Civ. P. 8(c), 12(b) (both regarding the pleading of defenses); Ark. R. Civ. P. 8(c), 12(b) (both regarding the pleading of defenses).**  However, assuming that Volvo can properly raise the constitutionality of the AFPA's "good cause" provision as a defense at this stage of the proceedings, its argument has failed to carry the day.

Volvo contends that this issue has been determined by the Fourth Circuit in *Central GMC, Inc. v. General Motors Corp.*, 946 F.2d 327 (4th Cir. 1991).  Volvo argues that *Central GMC* established, as a matter of law, any "good cause" provision in a dealer or franchise statute that did not allow for market withdrawals or the business interests of the franchisor to constitute "good cause" violated the dormant commerce clause.  ***See,*** **Volvo's**

**Opposition at 31-32.** Volvo's reliance is misplaced; *Central GMC*
established no such rule.[8]

At issue in *Central GMC* was a Maryland statute regulating the
termination of automobile franchises. The issue was not the
constitutionality of the Maryland statute, but rather whether a dealer had
only one franchise or a separate franchise for each individual line of trucks
(*i.e.* light duty, heavy duty, etc.) that it sold. **Central GMC, Inc., 946 F.2d
at 330.** The court determined that Central GMC held only one franchise
and, therefore, General Motors' withdrawal from the heavy-duty truck
market did not constitute a franchise termination. **Id., at 332.** The court
further stated that an opposite determination would raise commerce clause
*concerns*, and that avoiding this issue was an additional reason for
interpreting the Maryland statute in that manner. **Id., at 334-35.** In other
words, the *Central GMC* court, like many others, simply remarked that a
commerce clause issue existed, but declined to make a definitive ruling
thereon. **See, e.g., Consumers Oil Corp. of Trenton, N.J., v. Phillips
Petroleum Co., 488 F.2d 816, 819 (3d Cir. 1973) (remarking that**

---

[8]In fact, this Court has uncovered no case in which a court
determined that a "good cause" provision like the one here is in violation of
the dormant commerce clause.

**constitutional questions exist);** *Lee Beverage Co., Inc. v. I.S.C. Wines*
*of California, Inc.***, 623 F. Supp. 867, 869 n.1 (E.D. Wis. 1985) (same).**
*See also, Atlantic Richfield Co. v. United States Dep't of Energy***, 683**
**F.2d 410, 412 (Temp. Emer. Ct. App. 1980) ("[I]t is the clearly**
**established policy of the federal courts to decide constitutional**
**issues only when necessary to the resolution of a controversy[.]");**
*Mutafis v. Erie Ins. Exchange***, 728 F.2d 672, 673 (4**[th] **Cir. 1984) ("[W]e**
**note that we should not decide constitutional issues unless they**
**inescapably require decision.").**

Where the dormant commerce clause is at issue, the Court proceeds
on a two-tiered basis.  The first tier, or "*per se* violation tier," asks whether
a "'statute clearly discriminates against interstate commerce,'" or has the
"practical effect of regulating extraterritorially."  *Yamaha Motor Corp. USA*
*v. Jim's Motorcycle, Inc.***, 401 F.3d 560, 567 (4**[th] **Cir.),** *cert. denied***, 126**
**S. Ct. 422 (2005) (quoting** *Wyoming v. Oklahoma***, 502 U.S. 437, 454-55**
**(1992));** *Instructional Sys., Inc. v. Computer Curriculum Corp.***, 35 F.3d**
**813, 824 (3d Cir. 1994).**  Discriminatory statutes, whether they
discriminate facially, purposefully, or in effect, are virtually *per se* invalid,
and will only be saved when "demonstrably justified by a valid factor

unrelated to economic protectionism.'" ***Yamaha Motor Corp., supra***

**(quoting *Wyoming v. Oklahoma, supra*).**

Even where there is no *per se* violation, a state statute may

nevertheless run afoul of the commerce clause by placing a prohibited

burden on interstate commerce.  To make this second-tier determination,

courts apply the "*Pike* balancing" test, which weighs the statute's burden

on interstate commerce against its local benefit. "[W]here the statute

regulates even-handedly to effectuate a legitimate local public interest, and

its effects on interstate commerce are only incidental, it will be upheld

unless the burden imposed on such commerce is clearly excessive in

relation to the putative local benefits."  ***Pike v. Bruce Church, Inc.*, 397**

**U.S. 137, 142 (1970).**

Volvo makes no assertion that the state law at issue violates the

commerce clause by virtue of discrimination in purpose, effect, or facially.

***See,* Volvo's Opposition, at 31-32.**  Instead, Volvo argues that the

Arkansas statute, if "good cause" is not interpreted to include market

withdrawals and franchisor business decisions, "has the impermissible

practical effect of regulating commerce occurring wholly outside

[Arkansas's] borders." ***Id.*, at 32 (citation and internal quotations**

**omitted).**  Volvo provides no further analysis nor argument.

"[I]t is inevitable that a state's law, whether statutory or common law,

will have extraterritorial effects.  The Supreme Court has never suggested

that the dormant Commerce Clause requires Balkanization, with each

state's law stopping at the border." ***Instructional Sys.*, 35 F.3d at 825.**  In

commenting on its prior decisions concerning "extraterritorial effects," the

Supreme Court summarized them as follows:

> Taken together, our cases concerning the extraterritorial effects
> of state economic regulation stand at a minimum for the
> following propositions: First, the "Commerce Clause . . .
> precludes the application of a state statute to commerce that
> takes place wholly outside of the State's borders, whether or
> not the commerce has effects within the State," *Edgar v. MITE
> Corp.*, 457 U.S. 624, 642-643 [] (1982) (plurality opinion); *see
> also Brown-Forman* [*Distillers Corp. v. N.Y. State Liquor Auth.*],
> 476 U.S. [573,] 581-583 [(1986)]; and, specifically, a State may
> not adopt legislation that has the practical effect of establishing
> "a scale of prices for use in other states," [*GAF*] *Seelig* [*Inc. v.
> Baldwin*], 294 U.S. [511,] 528 [(1935)].  Second, a statute that
> directly controls commerce occurring wholly outside the
> boundaries of a State exceeds the inherent limits of the
> enacting State's authority and is invalid regardless of whether
> the statute's extraterritorial reach was intended by the
> legislature.  The critical inquiry is whether the practical effect of
> the regulation is to control conduct beyond the boundaries of
> the State.  *Brown-Forman*, 476 U.S., at 579.  Third, the
> practical effect of the statute must be evaluated not only by
> considering the consequences of the statute itself, but also by
> considering how the challenged statute may interact with the

legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation.  Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State.  *Cf. CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 88-89 [] (1987).  And, specifically, the Commerce Clause dictates that no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another.  *Brown-Forman*, 476 U.S., at 582[.]

**Healy v. Beer Inst., Inc., 491 U.S. 324, 336-37 (1989).**

Volvo does not explain how the AFPA creates the repugnant effects which resulted in the Supreme Court's striking the statutes at issue in *Brown-Forman* and *Healy*.  The statutes in those cases insisted on price parity for businesses in their own states as compared to surrounding states, such that the complaining party could not lower its prices in other states without doing the same in New York (*Brown-Forman*) and Connecticut (*Healy*).  The Supreme Court found the *Brown-Forman* statute invalid because "[f]orcing a merchant to seek regulatory approval in one State before undertaking a transaction in another directly regulates interstate commerce."  **Brown-Forman, 476 U.S. at 582.**  Similarly, the Court found the *Healy* statute invalid because it controlled prices in other

states and interfered with those States' regulatory schemes. **Healy, 491 U.S. at 338-39.** Such is not the case here.

Like the statute at issue in *Star Scientific, Inc. v. Beales*, 278 F.3d 339 (4th Cir. 2002), the AFPA simply does not have the same effect as the statutes in *Brown-Forman* and *Healy*. The "good cause" provision (and the AFPA as a whole) is specifically limited in application to franchises located in Arkansas. *See* **AFPA § 4-72-203;** *see also, Chalmers v. Toyota Motor Sales, USA, Inc.***, 326 Ark. 895, 906-07, 935 S.W.2d 258, 264 (1996) (stating that "[a]s a general rule, statutes have no effect except within the state's own territorial limits," and refusing to apply the Arkansas Unfair Practices Act, §§ 4-75-201,** *et seq.***, extraterritorially).** Clearly such a statute, where at least one end must be in Arkansas, cannot regulate commerce occurring *wholly outside Arkansas*. Furthermore, nothing in the Act premises "good cause" on the franchisor's actions in another state, nor does it attempt to create any sort of "price parity" between Arkansas and its sister states. A franchisor is free to terminate a franchise in any other state for any reason without violating the Arkansas statute in any respect. Similarly, the "good cause" provision does not require a franchisor to continue operating a franchise in Arkansas if it also

continues operating a franchise in another state. In short, "[t]he statute . . . does not have the 'practical effect' of controlling prices or transactions occurring wholly outside of the boundaries of [Arkansas] . . . . [and] [t]hus, the rule of *per se* invalidity does not apply[.]" **Star Scientific, 278 F.3d at 356.**

Finally, Volvo has not shown how the AFPA's "good cause" provision would subject Volvo or other franchisors to inconsistent legislation. Based on the previous discussion of the Act's effects, this Court does not believe it would. ***See, CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987) (where, in addressing the potential extraterritorial effects of a corporate voting statute, the Court stated that "[s]o long as each State regulates voting rights only in the corporations it has created, each corporation will be subject to the law of only one State.").**

A state law that does not constitute a *per se* violation of the commerce clause can nevertheless be stricken as constituting an impermissible burden on interstate commerce. Volvo, however, has not asserted that the "good cause" provision in the AFPA creates an excessive burden on interstate commerce when compared to its local benefits. Even if Volvo had uttered the phrase "excessive burden," which it did not, Volvo

has not met its burden of proffering evidence or argument in support of such an assertion so as to create a genuine issue of fact. ***Alliance of Auto. Mfrs. v. Gwadosky***, 430 F.3d 30, 39-41 (1st Cir. 2005) (affirming the grant of summary judgment on a dormant commerce clause claim where statute's challenger failed to make out a genuine issue of fact); ***UFO Chuting of Haw., Inc. v. Young***, 380 F.Supp.2d 1160, 1164 (D. Haw. 2005) (granting summary judgment on a dormant commerce claim where "UFO does not raise any triable issue of fact with respect the legislature's decision . . . [and] has presented no evidence demonstrating the ban's impact on interstate commerce."); ***Seeright***, 978 F.2d at 848 (the party challenging the constitutionality of the statute bears the burden of showing that it offends the dormant commerce clause); ***Kendrick v. Baca***, 141 Fed. Appx. 511, 513 (9th Cir. 2005) ("[W]e resolve only the constitutional questions squarely presented to us[.]").

Therefore, the Court finds that the AFPA's "good cause" provision as currently in effect is not *per se* invalid and Volvo has neither made nor supported an argument that the provision creates an "excessive burden" on interstate commerce. The Court further finds that violation of the dormant

commerce clause is the only basis proffered by Volvo on which this Court could adopt Volvo's urged interpretation of the AFPA and no dispute exists as to any other material element of Clark's claim under § 4-72-204(a) except for damages.[9]  Therefore, Clark's motion for summary judgment as to Volvo's violation of the AFPA by terminating the Agreement without "good cause" is granted.

As the damages for such violation have not been established beyond dispute, same will be set for trial.  Under the AFPA, Clark is entitled to recover the actual damages as a proximate result of Volvo's termination without "good cause," with Clark bearing the burden of proof on both the existence (and extent) of damages and proximate causation.  ***See* Ark. Code Ann. § 4-72-208(b).**  Clark is also entitled to reasonable attorney's fees and litigation costs, both to be determined by the Court.  *Id.*  The parties are directed to *South Beach Beverage Co., Inc. v. Harris Brands, Inc.*, 355 Ark. 347, 138 S.W.3d 102 (2003), and the cases cited therein, for

---

[9]There is no dispute that (1) Clark had a franchise, (2) the franchise was – and was required to be – located in Arkansas, or (3) the franchise was terminated.  These matters, in conjunction with a lack of "good cause" for the termination, proof of damages suffered, and proof that the wrongful termination was a proximate cause of those damages, constitute the material elements of a claim under the AFPA § 4-72-204(a).  ***See,* Ark. Model Jury Instr., Civil AMI 2800 (2006 ed.).**

the factors the Court will use to determine the amount of reasonable attorney's fees in this case.

## IV. ORDER

**IT IS, THEREFORE, ORDERED**, that Clark Machinery Limited's motion to strike Volvo's reply memorandum is **GRANTED** and such reply memorandum is **STRICKEN** from the record.

**IT IS FURTHER ORDERED** that Volvo's cross-motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Clark Machinery Limited's motion for summary judgment in regards to Volvo's violation of the Arkansas Franchise Practices Act by virtue of terminating the Dealership Agreement without good cause is **GRANTED**, and this matter will be set for trial on the issue of damages only.  Clark's summary judgment motion is in all other respects **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk calendar this case for trial at the Court's trial term in the Asheville Division beginning May 1, 2006, with the final pretrial conference scheduled for April 24, 2006.  The parties are advised to consult the Court's Pretrial Order and Case Management

Plan previously filed in this consolidated action on April 16, 2002, for matters concerning trial procedures.

Signed: February 16, 2006

Lacy H. Thornburg
United States District Judge